**NEW ENGLAND TANK INDUSTRIES OF NEW HAMPSHIRE, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 88–1157.**

United States Court of Appeals, Federal Circuit.

Jan. 13, 1989.

Amos Hugh Scott, of Choate, Hall & Stewart, Boston, Mass., argued, for appellant. With him on the brief, were Edward H. Seksay and Kenneth W. Gurge, of Choate, Hall & Stewart, Boston, Mass.

J. Keith Burt, of the Civ. Div., Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief, were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Of counsel were Kay Bushman and Richard Saviet, of the Defense Logistics Agency, Alexandria, Va.

Before MARKEY, Chief Judge, BALDWIN, Circuit Judge, and RE, Chief Judge. *

## ORDER

MARKEY, Chief Judge.

The United States (petitioner) seeks deletion of certain phrases in the court's opinion accompanying its decision in *New England Tank Industries v. United States*, 861 F.2d 685 (Fed.Cir.1988).[1] As grounds, petitioner asserts:

(1) This court's characterization of the government's conduct as conspiratorial and deceitful constituted improper *de novo* fact finding, contrary to 41 U.S.C. § 609(b).

(2) There is no support in the record for such characterization.

(3) The characterization is inconsistent with this court's remand for the board's view of whether the regulation was intended by DOD as mandatory.

(4) DSA was not itself responsible for the decision not to publish DODD 7420.1.

* The Honorable Edward D. Re, Chief Judge of the Court of International Trade, sitting by designation.

1. Petitioner, without leave, attached to its petition a copy of this court's opinion, in which the

(5) The Assistant Secretary of Defense's (ASD(C)) after-the-fact approval shows absence of conspiracy or deceit.

(6) Because New England Tank Industries (NET) did not allege commercial impracticality, DSA's conduct was merely "preserving for itself the value of its bargain."

(7) NET argued that 7420.1 was constructively published.

(8) If its exercise of the renewal option be void, the Defense Supply Agency (DSA) will lose its contract right to purchase NET's facility for $295,000.

(9) DSA *could* have cited excess, prior year O & M funds, or *could* have sought a waiver of DODD 7420.1.

### (1) De Novo Fact Finding

Petitioner places major reliance on the favored tactic of those who lose appeals—a blunderbuss attack on the appellate court for engaging in the sin of fact finding on its own. It is, of course, axiomatic that an appellate court must not "find its own facts", but petitioner's assumption that that happened here is false.

First, petitioner places primary reliance on 41 U.S.C. § 609(b):

In the event of an appeal by a contractor or the Government from a decision of any agency board pursuant to section 607 of this title, notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board on any question of law shall not be final or conclusive, but the *decision on any question of fact shall be final and conclusive and shall not be set aside* unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence. (emphasis added)

portions to which petitioner objects are rendered illegible. Most of petitioner's deletions touch on this court's characterization of the government's conduct. Others are unexplained and unexplainable.

As even a cursory reading of its opinion will show, this court "set aside" *no* finding of the board. On the contrary, it accepted and relied upon the board's findings as "final and conclusive", quoting many and citing the numbers of many more. 41 U.S.C. § 609(b) was clearly not violated.

Second, the nearest petitioner comes to asserting a contrary "finding" is to point to the board's characterization of DSA's conduct as failing to proceed in an "unqualified manner." Nowhere does petitioner contest the board's findings on what the government *did.* Nor did this court. Nor does the government assert that it openly and candidly approached its contracting partner to discuss renewal in light of the change effected by 7420.1. Whether the government's less-than-straightforward conduct be characterized as "qualified" or "deceitful" (and assuming that those terms are not in this case synonymous) would not appear to affect the outcome of the case in the slightest.[2] Nor would the application of a different label to that conduct constitute *de novo* fact finding.

■ Lastly, petitioner repeatedly asserts, incorrectly, that neither party raised the question on appeal of how the government's conduct should be characterized. NET characterized the government's conduct, saying officials "deliberately circumvented acknowledged restrictions on its authority" and pointing to the public policy requiring the government to "deal in an honest and trustworthy fashion." If petitioner's assertion were true, it would be irrelevant, the parties being incapable of precluding a court's comment on conduct established in the record.[3]

Petitioner's assertion that the board made no finding on the nature of the government's conduct conflicts with petitioner's assertion that the board's characterization, "unqualified manner", was a contrary finding.

Assuming arguendo that a court's characterization of established conduct must be taken in a civil case as a "finding", petitioner's argument that this court engaged in *de novo* fact finding continues to fall of its own weight, for it cites, quotes, and relies on this statement in *Ordinance Research, Inc. v. United States,* 609 F.2d 462, 221 Ct.Cl. 641 (1979):

> If an administrative board has failed to make a relevant finding of fact and the evidence relating to this fact is undisputed, we may make a supplementary finding without returning the case to the board. Analogously, where the evidence is disputed but the overwhelming weight of the evidence strongly points to one conclusion of fact, we may make a necessary contrary finding without returning the case to the board, to obviate what would otherwise become "an empty ritual [which] has no place in a rational decision-making process."

Petitioner ignores the first sentence in the foregoing quotation, arguing strenuously and only against the making of a contrary finding discussed in the second sentence. If, as petitioner asserts, the board made no finding and did not "even address the issue," the first sentence in the quote from *Ordinance Research* would authorize our characterization (considered, as petitioner would have it, as a "supplementary finding"). If, as petitioner argues, our characterization be deemed a contrary finding, the second sentence in the quote would authorize it, for the "overwhelming weight of the evidence strongly points to" that "finding" in light of the record and the facts found by the board, entirely accepted by this court, and not contested on appeal by the government.

### (2) Support in the Record

■ This court's opinion cited support, chapter and verse, for its characterization

---

2. Petitioner says the board characterizes DSA's actions "benignly", quoting as support for that statement the board's reference to DFSC's use of the wrong credit card. The quoted reference said nothing about concealment from NET and, if it were a "benign characterization" of the government's conduct, the reference would be in direct conflict with the board's findings quoted in this court's opinion.

3. Similarly, petitioner's reliance on NET's failure earlier to assert bad faith (in its effort to obtain discovery) is unavailing. That failure cannot change the facts in the record.

of the government's conduct. Significantly, petitioner manages to simply ignore crucial facts of record (and set forth in the opinion). Of particular note is petitioner's failure even to mention: the May 1974 statement of DFSC's Commander that the contract "could be lost to DSA" if he had to modify it per 7420.1 (at 688); the board's finding that the government *knew* NET could have a basis for refusing to renew if the stock fund were not cited (at 689); DSA's experience with the Holly contract (at 692); the Autumn 1974 DFSC memorandum noting that the prices are "extremely low" and the contract "could be lost" if the stock fund were not cited (at 689); board findings 40, 43, 47 and 48 to which this court pointed as detailing "the government's knowing effort to hide the facts from NET" (at 689); and the board's other findings described on page 692. The reader of this court's opinion will note further support for this court's characterization of the government's conduct in this case.

Petitioner simply dislikes this court's use of "deceit" as a synonym for the government's "knowing effort to hide the facts from NET" detailed in the findings of the board. That effort involved a number of offices, hence the characterization "conspiratorial." Petitioner argues as though this court's characterization of the *government's* conduct must be evaluated only in light of DSA's present view of its own actions.

Unable to deny that it believed it lacked authority to cite the stock fund, that it did so to hold on to an "extremely low" price contract, and that it hid the facts from NET, which had notified the government of its dissatisfaction with those prices, petitioner supplies no suggested substitute for our characterization, and we know of none that would better describe the conduct of the government established in the record and found by the board.[4]

### (3) The Remand

■ Petitioner argues that a finding on remand that 7420.1 was not mandatory on

contracting officials could be inconsistent with our characterization of the government's conduct. The argument is fallacious. As the record makes clear and as found by the board, the contracting officials asked for, but had not received, authority to cite the stock fund, yet they cited it anyway to "keep the contract." Petitioner's argument reduces to an assertion that conspiratorial deception cannot be so characterized if it later turns out to have been unnecessary. Whatever the Secretary of DOD should decide in 1989 would have no effect on the question of whether the government's conduct in 1974 is fairly characterized in this court's opinion.

### (4) DSA's Responsibility

DSA's assertion that it did not control publication of 7420.1 need not detain us long. The board's use of the government's election not to publish as a basis for saying the government was bound to renew the contract (and, for that reason, NET was also bound), and our rejection of that reasoning (as placing in the government an unfair weapon likely to destroy its contracting system), has nothing to do with which unit in the government controlled publication of 7420.1. The government does not contest the board's finding that NET did not know of 7420.1 (at 690).

### (5) ASD(C)'s Approval

■ Similarly, DSA's reliance on ASD(C)'s after-the-fact approval to use the stock fund is difficult to understand. Petitioner admits that it requested approval before it exercised the renewal option (thus further confirming that it *knew* it did *not* have authority) and that it renewed the contract *before* it received the requested approval (and, as far as the record discloses, before it knew whether approval would or would not be granted). Approval was not (and perhaps could not have been) granted *nunc pro tunc.* ASD(C)'s after-

---

**4.** Petitioner does say, in connection with its "alternatives" argument, that its actions were "misguided." As the record and board findings make clear, petitioner's actions were "guided" by a desire to hold on to a low price contract and to do so by disregarding 7420.1 and concealing that disregard from NET.

the-fact approval is no basis for characterizing the government's actions here as anything but the "knowing effort to hide the facts from NET" detailed in the board's findings.

### (6) Commercial Impracticality

██ This court's opinion, quoting the board (at 688) totally undermines petitioner's assertion that NET's failure to specifically allege commercial impracticality somehow precludes our characterization of the government's conduct. Moreover, we detect no essential difference between "commercial impracticality" and NET's repeated requests to renegotiate a "losing" contract, its citation of $50,000 annual losses, and another contractor's similar request.

### (7) Constructive Publication

██ Appealing from a board decision that said non-publication was a basis for binding the government and thus binding it, NET did say the stipulation that 7420.1 was not published was incorrect, because it could be considered to have been constructively published. The board, the government, and this court accepted the stipulation and the record supports it. Petitioner would, on the sole basis of NET's argument, have this court make a *de novo* finding, contrary to that detailed in the board's findings, that "the government did *not* engage in a knowing effort to hide the facts from NET," and a *de novo* finding, contrary to that of the board, that 7420.1 *was* "published" or that NET can be charged with knowledge of it. We reject petitioner's demand for *de novo* fact findings. 41 U.S.C. § 609(b).

### (8) Right to Purchase

██ Petitioner goes entirely outside the record in asserting, for the first time, that a voiding of the contract would remove the government's opportunity to acquire NET's facility for $295,000, that it has now condemned the facility, and that there is now a suit in the district court on the matter, in which NET is claiming that its facility is worth $6 million. The relevance of all that information, even if it were not *dehors* the record, escapes us. Petitioner does say it all goes to show that the government's conduct here should be excused because it had more to lose than below-market prices for fuel, but it is obviously insufficient to warrant a change in our characterization of the government's conduct. Petitioner's aplomb in suggesting that we respond to an after-the-appeal assertion of facts is at best surprising in view of its attack on this court for engaging in what petitioner chooses to call *de novo* fact finding.

### (9) Alternatives

██ It is eminently unpersuasive to argue that because the government *could* have engaged in a different course of conduct a court cannot characterize the conduct it did engage in as the facts warrant. As the record makes plain, and as the board found, the involved officials believed they had to cite the stock fund, for they knew if they did not (and NET caught on) they risked loss of the contract, and they did, without authority, cite the stock fund. Whether they knew of alternatives [5] is simply irrelevant, for they eschewed them.

### CONCLUSION

For the foregoing reasons, it is accordingly ORDERED:

That the petition be denied.

---

**5.** Petitioner's assertion that DSA could have sought a waiver of 7420.1 is difficult to understand. As petitioner elsewhere asserts, and as the record shows, it *did* seek ASD(C)'s approval to cite the stock fund. If the latter be not a request for waiver, the distinction escapes us.