988 So.2d 717 (2008)
INTERACTIVE RETAIL MANAGEMENT, INC., individually and on behalf of all others similarly situated, Appellant,
v.
MICROSOFT ONLINE, L.P., and Microsoft IA, Inc., Appellees.
No. 2D07-2885.
District Court of Appeal of Florida, Second District.
August 20, 2008.
*718 Marie Tomassi, John D. Goldsmith, and Katie M. Brinson of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, for Appellant.
David B. Weinstein and Kimberly S. Mello of Greenberg Traurig, P.A., Tampa, and Charles B. Casper and Peter Breslauer of Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, Pennsylvania, for Appellees.
SILBERMAN, Judge.
Interactive Retail Management, Inc. (IRM), individually and on behalf of others similarly situated, appeals an order dismissing its amended class action complaint against Microsoft Online, L.P., and Microsoft IA, Inc., (collectively, Microsoft).[1] The trial court dismissed the complaint on the basis that Florida was an improper venue. We reverse and remand for further proceedings because the trial court should have held an evidentiary hearing to resolve disputed issues of fact relevant to the venue issue.

BACKGROUND
IRM's lawsuit challenges Microsoft's practices with respect to advertisements by IRM and other merchants on the MSN Shopping Channel website and in the MSN Shopping Distribution Network.[2] The advertisements included links to IRM's and other merchants' websites through which consumers could purchase products, obtain additional information about the merchants' products, and search for other products. Microsoft charged merchants such as IRM each time a potential customer "clicked" on the link to the merchant's website contained in one of the advertisements.
According to IRM, Microsoft improperly charged it and other merchants for clicks that had not been generated by prospective customers, referred to as "click fraud." Based upon the alleged click fraud, IRM filed a class action complaint against Microsoft, alleging claims for breach of contract, unjust enrichment, and violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).[3] In support of its allegations, IRM attached a copy of a contract between IRM and Microsoft Online signed on June 30, 2005, by Richard Granger, IRM's president (referred to as the June contract). The copy of the contract attached to IRM's complaint does not contain a signature on Microsoft's behalf.
Microsoft moved to dismiss the complaint arguing, among other things, that it had been filed in the wrong venue based upon a forum selection clause contained in the contract. The forum selection clause provides that "Advertiser hereby irrevocably consents to the personal jurisdiction of, and exclusive venue for any legal proceeding commenced by or on behalf of Advertiser, in the state and federal courts sitting in King County, Washington, USA."
*719 In opposition to the motion to dismiss, IRM argued that there was no signed agreement between the parties containing a forum selection clause because Microsoft had not executed the June contract and it never became effective. IRM filed an affidavit by Richard Granger in which he averred that he never received a signed copy of the contract and that, to his knowledge, Microsoft Online, L.P., never signed it. Mr. Granger further averred that IRM's only office was located in St. Petersburg, Florida, and that IRM does not conduct any business in Washington State. He stated that IRM's contacts with Microsoft occurred solely in Florida or through communications with Microsoft's representatives in New York and that he negotiated the June contract with representatives of Microsoft Online, L.P., solely in Florida or New York. He added that, to his knowledge, Microsoft had no offices or employees in Washington State and that Microsoft's principal place of business was in Reno, Nevada. IRM also argued that public policy militated against enforcement of the forum selection clause because neither Microsoft nor IRM had any connection to Washington State and because Florida has a strong public policy of maintaining FDUTPA class action claims in Florida. Finally, IRM argued that the forum selection clause was unenforceable because it was ambiguous.
Before the trial court ruled on Microsoft's motion to dismiss, IRM filed an amended complaint. IRM dropped the breach of contract claim but still attached the June contract reflecting Mr. Granger's signature. Microsoft again moved to dismiss, asserting improper venue pursuant to the forum selection clause, as well as other grounds.
Microsoft argued that the June contract contained a forum selection clause that required IRM to litigate its claims in Washington State. Microsoft contended that the forum selection clause was presumptively valid and enforceable absent IRM showing that enforcement would be unreasonable or unjust. Microsoft filed several affidavits, including the affidavit of Sally Clayton, an account executive for the Microsoft Digital Advertising Solutions unit of Microsoft Corporation. Ms. Clayton stated that she had the authority to represent Microsoft Online, L.P., and to sign contracts with customers on its behalf. She stated that she signed the contract with IRM on June 30, 2005, and attached a copy of the fully-executed contract to her affidavit.
Microsoft also filed the affidavit of Melissa Barden, an account executive for the Microsoft Network Advertising Sales unit of Microsoft Corporation in Redmond, King County, Washington. Ms. Barden stated that from June 2005 through June 2006, she was responsible for managing IRM's account, had regular contact with IRM by e-mail from her office in Redmond, and had negotiated the terms of the contract with IRM. On June 30, 2005, she sent an e-mail from her office in Redmond to Mr. Granger, attaching the contract and asking that Mr. Granger return two original, signed copies of the contract to her in Redmond. She also asked that he send a signed copy to her fax number in Washington State. She stated that Mr. Granger called her in Redmond and faxed the signed contract. She added that she later received a signed copy that Mr. Granger mailed to her in Redmond. Ms. Barden stated that on March 24, 2006, while addressing IRM's concerns about the click activity on its account, she sent an e-mail to Mr. and Mrs. Granger that included a copy of the fully-executed contract.
Ms. Barden averred that on October 3, 2005, she received an e-mail from Mr. Granger seeking to exercise a termination *720 provision contained in the June contract. Then, in November 2005, IRM sought to re-establish its relationship with Microsoft Online, L.P. On November 30, 2005, Ms. Barden sent an e-mail "explaining that the terms, including pricing, would be based on the original MSN Agreement."
IRM responded to Microsoft's motion with a memorandum and a second affidavit by Mr. Granger. Mr. Granger stated that at no point during his e-mail correspondence with Microsoft did he know that Microsoft's employees were based in Washington State. He disputed Microsoft's contentions as to its execution of the June contract and his mailing of the contract to Washington State. He reiterated that he had terminated the June contract and stated that on November 30, 2005, IRM and Microsoft entered into a new agreement that did not include the terms and conditions of the June contract.
In its memorandum, IRM reiterated the legal arguments that it made in response to the original motion to dismiss. Concerning the affidavits submitted on Microsoft's behalf, IRM claimed that it was never aware of the physical location of those individuals and did not knowingly have any dealings with Microsoft in Washington State. IRM contended that, to its knowledge, neither Microsoft Online, L.P., nor Microsoft IA, Inc., had offices or employees in Washington State. IRM further challenged the validity of the fully-executed contract that Microsoft had produced. IRM argued that Microsoft did not send the signed contract to IRM until nine months after Microsoft had purportedly signed it and five months after it had been cancelled. IRM suggested that the contract had not, in fact, been timely executed and requested leave to conduct discovery with respect to its execution. IRM disagreed with Microsoft's characterization of the November 30th e-mail from Ms. Barden and argued that when IRM again began advertising with Microsoft, it was pursuant to a separate agreement which did not incorporate the forum selection clause.
At the hearing on Microsoft's motion to dismiss, the trial court acknowledged IRM's request to conduct discovery but decided to proceed with the hearing. IRM also requested an evidentiary hearing, but the trial court declined and stated that it would base its decision only upon what was established in the record.
In an order rendered on April 4, 2007, the trial court granted Microsoft's motion to dismiss. The court concluded that Microsoft "made a sufficient showing in support of its Motion to Dismiss, as to the forum selection clause," and found that all issues, "including all collateral issues of the validity and terms of the subject agreements, should be resolved in the designated forum in the State of Washington." The court found "that neither the inclusion of a class action claim or a claim pursuant to the Florida Deceptive and Unfair Trade Practices Act, prevents nor conflicts with the finding set forth above as to the proper forum." The trial court later rendered a final order of dismissal.

ANALYSIS
"The right to initially select venue belongs to the plaintiff." Loiaconi v. Gulf Stream Seafood, Inc., 830 So.2d 908, 909 (Fla. 2d DCA 2002); see also Leatherwood v. Cardservice Int'l, Inc., 885 So.2d 997, 998 (Fla. 4th DCA 2004) (noting same). Moreover, "[i]t is the defendant's burden to plead and prove that venue is improper." Loiaconi, 830 So.2d at 909-10. "A motion by the defendant to dismiss or transfer on the ground of improper venue raises issues of fact which must be resolved by an evidentiary hearing, unless the complaint shows on its face that venue is improper." Kinetiks.Com, Inc. v. Sweeney, *721 789 So.2d 1221, 1223 (Fla. 1st DCA 2001); see also Leatherwood, 885 So.2d at 998 (citing Kinetiks.Com. for the same proposition). "[W]hile a trial court has broad discretion in dealing with matters of venue, the party challenging venue must provide a sufficient factual basis for the exercise of that discretion." Loiaconi, 830 So.2d at 910.
Here, the record contains conflicting affidavits which create disputed issues of fact with respect to whether Florida is an appropriate venue to resolve IRM's class action claims against Microsoft. Microsoft submitted affidavits supporting its position that the parties had executed a contract that contained a forum selection clause requiring IRM to bring any action against Microsoft in King County, Washington. However, IRM filed affidavits that challenged the validity and applicability of the June contract. IRM contended that Microsoft had not timely executed and delivered the June contract and that the June contract had been superseded by a subsequent agreement between the parties that did not incorporate the forum selection clause. The parties' respective affidavits also conflicted as to contacts, or the lack of contacts, between IRM and Washington State.
Because there are disputed issues of fact concerning the existence of a valid and enforceable forum selection clause, the trial court should have held an evidentiary hearing before granting the motion to dismiss for improper venue. See Leatherwood, 885 So.2d at 998-99 (stating that a factual dispute concerning the enforceability of a forum selection clause required reversal of an order dismissing the complaint and remand for an evidentiary hearing). Further, on remand the trial court should permit the parties to conduct discovery addressing the factual disputes in order that the venue issue may be determined. See Dep't of Mgmt. Servs. v. Fastrac Constr., Inc., 701 So.2d 1200, 1201 (Fla. 5th DCA 1997). Once the factual issues are resolved following an evidentiary hearing, the court should be in a position to fully address the legal issues raised by the parties. Accordingly, we reverse the order dismissing the amended complaint and remand for further proceedings.
Reversed and remanded.
FULMER and KELLY, JJ., Concur.
NOTES
[1] Microsoft IA is alleged to be the general partner of Microsoft Online.
[2] Microsoft allegedly owns and operates the MSN Shopping Channel, an internet shopping website. The MSN Shopping Distribution Network is allegedly a Microsoft network of websites, including co-branded websites hosted by Microsoft Online and various third parties.
[3] §§ 501.201-.213, Fla. Stat. (2005).