DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LOANFLIGHT LENDING, LLC,

Appellant,

v.

BANKRATE, LLC,

Appellee.

No. 2D22-3394

_____

February 7, 2024

Appeal from the Circuit Court for Hillsborough County; Darren D. Farfante, Judge.

Nicholas Lafalce and John A. Anthony of Anthony & Partners, LLC, Tampa, for Appellant.

Thomas A. Valdez and Winifred H. Quinlan of Quintairos, Prieto, Wood & Boyer, P.A., Tampa, for Appellee.

LaROSE, Judge.

　　LoanFlight Lending, LLC, appeals the order dismissing its lawsuit against Bankrate, LLC. The trial court determined that the forum selection clause contained in the parties' business contract required LoanFlight to sue in New York. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A).[1] We reverse and remand for the trial court to conduct an evidentiary hearing so that it may resolve disputed issues of fact.

_____

　　[1] LoanFlight's notice of appeal invoked our jurisdiction pursuant to Florida Rule of Appellate Procedure 9.110. However, this is a procedural

## Background

LoanFlight is a Tampa-based residential mortgage lender. Bankrate is a consumer financial services company incorporated in Delaware; its principal place of business is in South Carolina. LoanFlight engaged Bankrate to help market its financial products and services. As LoanFlight artfully described it, the service Bankrate offered was akin to "match.com for home lenders." LoanFlight paid for access to Bankrate's website platform to obtain leads from consumers whose mortgage needs matched LoanFlight's loan rates.

Apparently, as mortgage interest rates rose, the number of fruitful leads available to LoanFlight evaporated. LoanFlight complained that Bankrate overbilled for its services and furnished fabricated leads. LoanFlight sued Bankrate in Hillsborough County for fraud, unjust enrichment, and declaratory relief.[2]

---

rule. *Compare* Fla. R. App. P. 9.030 ("Jurisdiction of Courts"), *with* 9.110 ("Appeal Proceedings to Review Final Orders of Lower Tribunals and Orders Granting New Trial in Jury and Nonjury Cases").

> Moreover, the notice included the following footnote:
> It is unclear whether or not the Dismissal Order is a final order. *See Touchton v. Woodside Credit, LLC*, 316 So. 3d 392[, 394] ([Fla. 2d DCA ]2021) (citing *Bd. [o]f Cnty. Comm'rs of Madison C[n]ty. v. Grice*, 438 So. 2d 392, 394 (Fla. 1983)) ("[w]here an order merely grants a motion to dismiss, it is not a final order."). This Notice of Appeal is being filed in abundance of caution in the event it is determined that the Dismissal Order is a final order.

(Fifth alteration in original.)

The order provides that LoanFlight's "Complaint is dismissed without prejudice to its right to bring these claims under the Agreement's Governing Law provision in the appropriate forum." Ordinarily, "when an order dismisses a complaint 'without prejudice,' that language signifies that the order is not a final order." *Al–Hakim v. Big Lots Stores, Inc.*, 161 So. 3d 568, 569 (Fla. 2d DCA 2014). However, "[i]f a dismissal is 'without prejudice' but it is clear from the context of the record that the

2

Bankrate moved to dismiss the complaint, alleging that "LoanFlight . . . sued Bankrate in the wrong place." In support of its motion, Bankrate submitted two documents to the trial court.

One was an unsigned and undated Master Advertising Services Agreement (MASA).[3] Purportedly, the MASA reflected the business arrangement between LoanFlight and Bankrate. Section 12, Paragraph G of the MASA provided as follows:

> Governing Law; Jurisdiction. This Agreement and all transactions contemplated by this Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York. Any civil action or legal proceeding arising out of or relating to this Agreement will be brought exclusively in the courts of record of the State of New York in New York City or the United States District Court, Southern

---

plaintiff's right to pursue the case requires the filing of a new case, the order is final." *U.S. Bank Nat'l Ass'n v. Rodriguez*, 206 So. 3d 734, 736 (Fla. 3d DCA 2016). The order before us fits the bill of finality. Thus, our jurisdiction lies under rule 9.030(b)(1)(A), authorizing district courts of appeal to "review . . . final orders of trial courts, not directly reviewable by the supreme court." (Footnotes omitted.)

[2] LoanFlight did not attach to its complaint a contract or other document memorializing the parties' respective duties and responsibilities in their business relationship.

[3] Bankrate is named as a party to the MASA. LoanFlight is not named in the MASA. Indeed, the MASA lacks any indication that any other party agreed to its terms.

According to Bankrate, the MASA is an enforceable "click-through" agreement. *See Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 764–66 (Fla. 4th DCA 2017). S*ee generally IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) ("On the internet, the primary means of forming a contract are the so called 'clickwrap' (or 'click-through') agreements, in which website users typically click an 'I agree' box after being presented with a list of terms and conditions of use, and the 'browsewrap' agreements, w[h]ere website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen." (quoting *Hines v. Overstock.com*, 668 F. Supp. 2d 362, 366 (E.D. N.Y. 2009))).

District of, New York, Borough of Manhattan. Each Party consents to the jurisdiction of such court in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such court. Service of any court paper may be effected on such Party by mail, as provided in this Agreement, or in such other manner as may be provided under applicable laws, rules of procedure, or local rules.

Bankrate's second document was titled "Amendment 1 To Master Advertising Services Agreement" (Amendment 1). Paul Blaylock, LoanFlight's CEO, signed Amendment 1 virtually. The "Recitals" in Amendment 1 stated that "Customer [LoanFlight] and Bankrate entered into a [MASA], dated August 6, 2018." Amendment 1 had a January 19, 2022, effective date.

Based on these documents, Bankrate contended that New York was the proper forum for the lawsuit. Bankrate asked the trial court to dismiss LoanFlight's lawsuit "without prejudice to LoanFlight's right to bring it in . . . New York."

Thereafter, a legal tit-for-tat ensued, with each party submitting written arguments and various exhibits. LoanFlight observed that the forum selection clause was contained in the undated, unsigned MASA, not in Amendment 1. It contended that "[i]t is axiomatic that for a party to be bound by a forum clause contained within an agreement, the party must have actually signed the agreement thereby agreeing to be bound by the provisions therein." Bankrate countered that LoanFlight had signed the MASA. Bankrate presented a diminutive screenshot of LoanFlight's alleged click-through acceptance of the MASA. However, the screenshot simply states that a "Legal Agreement" was accepted, not that LoanFlight had agreed to the MASA.

The trial court conducted a nonevidentiary hearing on Bankrate's motion to dismiss. The trial court simply heard counsel's arguments.

4

Bankrate complained of LoanFlight's "artful pleading" and posited a tautology:

> [T]he common denominator with every count is the fact that the leads that they obtained as a result of the agreement they entered into with Bankrate is the problem. That's the basis, that's the core, of their complaint, and all of those leads are only available to them because they entered into a contract with Bankrate.

In other words, an executed MASA had to exist because it was necessary for LoanFlight to secure leads from Bankrate.

Not so, LoanFlight insisted. It responded that there was no signed MASA in evidence, only an alleged screenshot of LoanFlight's purported click-through acceptance of the MASA. LoanFlight suggested it was an unusual and suspicious anachronism. *Cf.* William Shakespeare, *Julius Caesar* act 2, sc. 1, lines 193-195 (Brutus: "Peace, count the clock." / Cassius: "The clock has stricken three."). LoanFlight admitted that it did business with Bankrate pursuant to an informal, unwritten handshake agreement, and that "there was no [written] contract of any kind" until Mr. Blaylock "DocuSign[ed]" Amendment 1. Further, LoanFlight's counsel reported that "Mr. Blaylock vehemently states that he's never seen or signed th[e MASA]." Instead, counsel relayed that Mr. Blaylock "was induced to sign [Amendment 1] well after the damage[s] had occurred in order for [Bankrate] to cover their tracks. That's something for an evidentiary hearing. . . . What happened here was all the damages were incurred and then [Mr. Blaylock] signed the amendment."

Bankrate's counsel opined that an evidentiary hearing was unnecessary. She argued that "by virtue of the click-through agreement,

5

which we have provided and attached to the Motion to Dismiss, evidence of that click-through agreement, the initial contract was signed."[4]

The trial court noted that although the MASA was not attached to LoanFlight's complaint, it was attached to Bankrate's motion to dismiss. The trial court observed that the complaint "detailed the relationship between the parties" and that "[t]he court is well within its purview to consider the Agreement . . . [in light of] the allegations of the complaint."

In its order, the trial court observed that Amendment 1's "Recitals" reflect Mr. Blaylock's acknowledgment that the parties had "entered into [the MASA] dated August 6, 2018." The trial court pointed out that "[t]his acknowledgement is contrary to an unverified representation made in argument at the hearing . . . that the [MASA] was never signed by LoanFlight." Consequently, the trial court did "not believe there [wa]s any authority that compels it to conduct an evidentiary hearing on a Motion to Dismiss where the forum selection clause is specific and detailed and has no discretionary or permissive language." Because it was mandatory, "the forum selection clause . . . governs."

---

[4] Although a MASA was attached to Bankrate's motion to dismiss, LoanFlight's purported "assent" to the agreement first appears in our record as a copied-and-pasted screenshot in the body of Bankrate's "Reply Memorandum in Support of Its Motion to Dismiss":

Screen Shot of Click-Through Acceptance of the MSA:

| Advertiser | Advertiser ID | Agreement Status |
|---|---|---|
| LoanFlight Lending LLC | 10477 | Legal Agreement accepted 8/6/2018 3:27:39 PM |

6

After the trial court granted the motion to dismiss, LoanFlight sought reconsideration.[5]  LoanFlight argued that disputed issues of fact precluded the trial court from dismissing the lawsuit without conducting an evidentiary hearing.  LoanFlight attached an affidavit from Mr. Blaylock affirming:

> Of my own personal knowledge, I am not aware that such document was presented, generated, agreed to, or otherwise came into existence as a result of the arrangement between LoanFlight and Bankrate.  I do not have any information as to the origin of this document other than as stated by Bankrate in the context of this Action.
>
> It is my understanding that the relationship formed between LoanFlight and Bankrate was not evidenced by a contract at the time of the relationship's inception.

The trial court never ruled on the motion.  Fearing that the dismissal order was nonfinal, LoanFlight filed a notice of appeal to preserve its appellate remedies.[6]

## Analysis

We review the trial court's dismissal order de novo.  *See All Ins. Restoration Servs., Inc. v. Heritage Prop. & Cas. Ins. Co.*, 338 So. 3d 448, 449 (Fla. 2d DCA 2022) ("When considering an order granting a motion to dismiss, the de novo standard of review applies." (quoting *Belcher Ctr. LLC v. Belcher Ctr., Inc.*, 883 So. 2d 338, 339 (Fla. 2d DCA 2004))).  As

---

[5] In a footnote, LoanFlight expressed doubt about whether the dismissal order was a final appealable order.  In an abundance of caution, LoanFlight advised that its motion for reconsideration was "filed on a conditional basis" in order "to avoid waiving its appellate rights if in fact the Dismissal Order is determined to be a final order."

[6] We need not address Bankrate's assorted claims that LoanFlight's arguments are not preserved for appeal.  We have carefully considered arguments from LoanFlight's various written and oral arguments in the trial court.  Suffice it to say, LoanFlight preserved for our review the argument on which it now prevails.

7

framed by the parties, the issue before us is one of contract formation. *See Gunderson v. Sch. Dist. of Hillsborough Cnty.*, 937 So. 2d 777, 779 (Fla. 1st DCA 2006) ("Where the order on appeal turns on the validity of a contract, it is subject to a *de novo* standard of review."); *see also Am. Boxing & Athletic Ass'n v. Young*, 911 So. 2d 862, 864 (Fla. 2d DCA 2005) ("[A]n appellate court reviews the interpretation of a contractual forum selection provision as a matter of law.").

"The right to initially select venue belongs to the plaintiff. It is the defendant's burden to plead and prove that venue is improper." *Loiaconi v. Gulf Stream Seafood, Inc.*, 830 So. 2d 908, 909–10 (Fla. 2d DCA 2002) (citation omitted). Further, "[i]t is well established that 'parties may provide by their agreement where suit may be brought to enforce it.' " *Pocock v. Pocock*, 360 So. 3d 1219, 1222 (Fla. 2d DCA 2023) (quoting *Interval Mktg. Assocs. v. Sea Club Assocs. IV,* 468 So. 2d 262, 263 (Fla. 2d DCA 1985)).

The rationale underlying forum selection clauses is sound. As our supreme court observed, "forum selection clauses provide a degree of certainty to business contracts by obviating jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation." *Manrique v. Fabbri*, 493 So. 2d 437, 439 (Fla. 1986) (quoting *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889 (Minn. 1982)).

Our task is to review whether the trial court properly dismissed LoanFlight's lawsuit based on counsel's filings and arguments. Doing so requires that we review the record in light of LoanFlight's contention that it had never seen the MASA until seeing Bankrate's motion to dismiss.

Despite the technological advances attendant to the Internet, antediluvian pre-world wide web legal principles still adhere:

8

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir.[ ]2004). One such principle is the requirement that "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir.[ ]2002).

*Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) (alterations in original) (quoting *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014)); *see also State v. Fam. Bank of Hallandale*, 623 So. 2d 474, 479–80 (Fla. 1993) ("Mutual assent is an absolute condition precedent to the formation of a contract. Absent mutual assent, neither the contract nor any of its provisions come into existence.").

For a party to be bound by a forum selection clause contained in a contract, the party must have assented to the contract. *See You Fit, Inc. v. Core Indus., Inc.*, No. 8:12-cv-840-T-26TBM, 2012 WL 12952734, at *3 (M.D. Fla. June 22, 2012); *Bodywell Nutrition, LLC v. Fortress Sys.*, LLC, No. 10-61646-CIV, 2011 WL 31074, at *3 (S.D. Fla. Jan. 5, 2011); *Ward v. Kerzner Int'l Hotels Ltd.*, No. 03-23087-CIV-JORDAN, 2005 WL 2456191, at *6-7 (S.D. Fla. Mar. 30, 2005); *cf. Arena Football League v. Bishop*, 220 So. 3d 1243, 1245 (Fla. 1st DCA 2017) ("A contract requires mutual assent, and a form contract that provides it is between two parties . . . and that has only one party's signature cannot—without more—demonstrate mutual assent." (footnote omitted) (citation omitted)).

Having laid down some general, but fundamental, principles of contract formation, we turn to the issue at hand. "A motion by the defendant to dismiss or transfer on the ground of improper venue raises issues of fact which must be resolved by an evidentiary hearing, unless the complaint shows on its face that venue is improper." *Kinetiks.Com,*

*Inc. v. Sweeney*, 789 So. 2d 1221, 1223 (Fla. 1st DCA 2001); *Leatherwood v. Cardservice Int'l, Inc.*, 885 So. 2d 997, 998 (Fla. 4th DCA 2004). "[W]hile a trial court has broad discretion in dealing with matters of venue, the party challenging venue must provide a sufficient factual basis for the exercise of that discretion." *Loiaconi*, 830 So. 2d at 910.

Our record contains an undated and unsigned MASA. It does not show that LoanFlight assented to the agreement, much less that it was even a party to it. To hear LoanFlight tell it, Bankrate contrived the document out of whole cloth. Bankrate retorts that LoanFlight was the signatory to the MASA. Particularly problematic, there is no record evidence proving or disproving either side's position.[7] Rather, counsel's arguments about what happened conflict. We are not persuaded that a screenshot submitted by Bankrate is conclusive as to whether LoanFlight signed the MASA. For that matter, Amendment 1 contained virtual signature blocks, while the MASA does not:

IN WITNESS WHEREOF, the Parties hereto have executed this Amendment 1 as of the Amendment 1 Effective Date.

LoanFlight Lending, LLC

By: *Paul Blaylock*
9E08106D19D34EE

Printed Name: Paul Blaylock

Title: CEO

Bankrate, LLC

By: *Scott Hamer*
3BC911A84D6C470...

Printed Name: Scott Hamer

Title: Authorized Signatory

These many uncertainties urge caution. Based on our record, we are reluctant to conclude that LoanFlight entered into the MASA.

---

[7] The trial court relied heavily upon Amendment 1's "Recitals." However, LoanFlight disputed that it had ever signed the MASA, and Bankrate's submission of the undated and unsigned MASA does not demonstrate that LoanFlight was a party to the agreement, much less that the MASA was the August 6, 2018, agreement to which Amendment 1 referred.

Bankrate argues that the trial court properly dismissed LoanFlight's lawsuit without an evidentiary hearing. Bankrate tells us that a forum selection clause is presumptively valid and that it met its initial burden by simply filing the document.

> [W]here the relevant parties executed an agreement with a forum selection clause, such clause is presumed valid and the party seeking to avoid its application bears the burden "to establish that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."

*Royal Caribbean Cruises Ltd. v. Ooi*, 48 Fla. L. Weekly D1697, D1699 (Fla. 3d DCA Aug. 23, 2023) (quoting *Steiner Transocean Ltd. v. Efremova*, 109 So. 3d 871, 873 (Fla. 3d DCA 2013)).

We are unpersuaded. Bankrate's argument elides the antecedent, and controlling, issue: whether the parties entered a contract with a forum selection clause. Bankrate submitted an unsigned and undated MASA. Bankrate's argument requires cobbling together piecemeal documents to create an enforceable forum selection clause. Without the benefit of an evidentiary hearing, and in the face of LoanFlight's consistent and repeated claims that it did not enter the MASA, we are hesitant to undertake that task. *See New England Tank Indus. of N.H., Inc. v. United States*, 865 F.2d 243, 245 (Fed. Cir. 1989) ("It is, of course, axiomatic that an appellate court must not 'find its own facts' . . . ."); *see also, e.g.*, *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 123 (1969) ("[A]ppellate courts must constantly have in mind that their function is not to decide factual issues de novo."); *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 371 (D.C. Cir. 1978) ("Factfinding and the creation of a record are the functions of the [trial] court . . . ."). And the trial court could not do so absent evidence. *See, e.g.*, *Interactive Retail Mgmt., Inc. v. Microsoft Online, L.P.*, 988 So. 2d 717, 721 (Fla. 2d DCA

2008) ("Because there were disputed issues of fact concerning the existence of a valid and enforceable forum selection clause, the trial court should have held an evidentiary hearing before granting the motion to dismiss for improper venue."); *Leatherwood*, 885 So. 2d at 998 (holding that a factual dispute concerning the enforceability of a forum selection clause required reversal of an order dismissing the complaint and remand for an evidentiary hearing). Disputed factual issues concerning the existence of an enforceable contract are properly fleshed out at an evidentiary hearing before the trial court. *Cf. Consolo v. A.M.K. Corp.*, 344 So. 2d 1285, 1286 (Fla. 3d DCA 1977) (explaining that the unresolved issues of fact concerning "whether or not a contract existed between the parties" precluded the entry of summary judgment).

## Conclusion

We reverse the trial court's dismissal order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SLEET, C.J., and MORRIS, J., Concur.

———————————————

Opinion subject to revision prior to official publication.